## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROCHELLE WISE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 C 8128 |
| | ) | |
| v. | ) | Judge Jorge Alonso |
| | ) | |
| CREDIT CONTROL SERVICES, INC., | ) | |
| d/b/a CREDIT CONTROL SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, Rochelle Wise, brings this case under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*, against defendant, Credit Control Services, Inc. ("CCS"). The case is before the Court on the parties' cross-motions for summary judgment. For the following reasons, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted.

### BACKGROUND

CCS is a company that, "in certain instances . . . attempts to collect outstanding balances on accounts in the State of Illinois" and meets the definition of "debt collector" under the FDCPA. (Def.'s LR 56.1 Resp. ¶ 4, ECF No. 50.)  Liberty Mutual Insurance hired plaintiff to collect an unpaid sum on an account held in plaintiff's name.  (Pl.'s LR 56.1 Resp. ¶ 17, ECF No. 52.)  CCS sent plaintiff a number of collection notices in the spring of 2016.  (Pl.'s LR 56.1 Stmt., Ex. D, ECF No. 34-5 at 20-22 (filed under seal).)

Due to her "deteriorating financial situation," plaintiff met with lawyers at the Debtors Legal Clinic.  (Def.'s LR 56.1 Resp. ¶¶ 8-10.)  On July 8, 2016, plaintiff or her lawyers attempted to fax a letter to CCS in which plaintiff provided her name, address, the file number of her CCS

account (according to the collection notices she had received), the name of the creditor ("Liberty Mutual"), and the last four digits of her social security number. (*Id.* ¶ 10; *see* Pl.'s LR 56.1 Stmt., Ex. D, ECF No. 34-5 at 24.) In the body of the faxed letter, plaintiff declared, "I refuse to pay the above-referenced debt," and explained that she was insolvent and the amount of the debt, as reflected on her credit report, was inaccurate. (*Id.*) The sender used the fax number (617) 762-3099, a number that did not appear on any of the collection notices plaintiff received. (Pl.'s LR 56.1 Stmt., Ex. D, ECF No. 34-5 at 20-22, 24; Pl.'s LR 56.1 Resp. ¶ 24.)

It is not clear from the record why plaintiff or her lawyers used this number or how they found it, but the number was not generally used for collections correspondence. CCS admits that, in 2014, the number appeared on a webpage used by the human resources department of Enterprise Associates, LLC ("Enterprise"), in its recruiting functions. (Pl.'s LR 56.1 Resp. ¶ 5.) Enterprise is a company that, like CCS, falls under the "CCS Companies umbrella," but it does not directly engage in debt collection. (Pl.'s LR 56.1 Stmt., Ex. E, Stoddard Dep. at 19:4-5, 9-11, ECF No. 34-6.) Rather, Enterprise provides "payroll services and other human resource functions" to other companies "under the CCS umbrella." (*Id.* at 19:19-20:2.) CCS "doesn't technically have any employees" of its own; instead, all those who work at CCS, including those who perform its core debt collection functions, are employed by Enterprise. (*Id.* at 21:3-5.)

In response to CCC's inquiries about how plaintiff found the 3099 number, plaintiff's counsel provided defendant with a screenshot of a webpage captioned "CCSJobs.net – Apply by Fax," under a banner that read, "The CCS Companies." (Pl.'s LR 56.1 Stmt., Ex. D, ECF NO. 34-5 at 4-5; Def.'s LR 56.1 Resp. Ex. E, "Apply by Fax" Webpage Screenshot, ECF No. 43-5 (filed under seal).) The text of the webpage reads as follows: "Thank you for your interest in building a challenging career with us. You can fax your resume or curriculum vitae to The CCS Companies

at the following fax number: (617) 762-3099. Please indicate the job location, title and job code if applicable." (Def.'s LR 56.1 Resp., Ex. E, "Apply by Fax" Webpage Screenshot, ECF No. 43-5.) The page is time-stamped February 18, 2014, 3:25 p.m. (*Id.*)

According to CCS, Enterprise stopped using, displaying, or monitoring this fax number in 2014, and CCS denies ever receiving a copy of the fax until plaintiff's counsel produced a copy of the fax confirmation page in this litigation. (Pl.'s LR 56.1 Resp. ¶¶ 5-8.) CCS showed the fax confirmation page to the "group that has the records for fax numbers belonging to the different operating companies" under the CCS umbrella, who were able to confirm that the July 8, 2016 fax had been received at the 3099 number. (Stoddard Dep. at 21:10-22:2.)

The fax number shown on the collection notices plaintiff received from CCS is not (617) 762-3099 but (617) 658-5710. (Pl.'s LR 56.1 Resp. ¶¶ 16, 22-23; Pl.'s LR 56.1 Stmt., Ex. D, ECF No. 34-5 at 20-22.) Plaintiff's lawyers used this number to fax another letter to CCS on July 8, 2016, apparently in error. (Pl.'s LR 56.1 Resp. ¶¶ 34-35.) The 5710 fax is addressed to "Millennium Credit Consultants," in West St. Paul, Minnesota, and it lists a different account number and creditor (DirecTV), but it is otherwise identical to the 3099 fax. (Pl.'s LR 56.1 Stmt., Ex. D, ECF No. 34-5 at 17.) In response, defendant sent plaintiff a letter on July 20, 2016, acknowledging receipt of the 5710 fax but stating that CCS was "unable to find a file with your name and/or the account number you provided" and asking for more information, such as a copy of a CCS collection notice showing the CCS file number. (*Id.* at 18.)

On July 16, 2016, CCS sent plaintiff another collection notice on the Liberty Mutual account. (Def.'s LR 56.1 Resp. ¶ 13; Pl.'s LR 56.1 Stmt., Ex. D, ECF No. 34-5 at 19.) On August 16, 2016, plaintiff filed this suit, alleging that the July 16, 2016 letter was an attempt to collect a debt from plaintiff after she had refused to pay it, in violation of 15 U.S.C. § 1692c(c).

3

## DISCUSSION

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009); *see Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013) (court must enter summary judgment against a party who "'does not come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question'") (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). All facts and reasonable inferences are construed in the light most favorable to the nonmoving party. *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016).

The FDCPA was enacted "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)). Among its many protections for consumers is the requirement that, "[if] a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt," with some exceptions not relevant here. 15 U.S.C. §

4

1692c(c). Section 1692c(c) also provides that, "[i]f such notice from the consumer is made by mail, notification shall be complete upon receipt."

Plaintiff claims that the evidence conclusively establishes that CCS violated 15 U.S.C. § 1692c(c) and she is entitled to judgment as a matter of law. Defendant responds that (1) plaintiff lacks Article III standing because she has not suffered an actual injury; (2) plaintiff cannot prove the Liberty Mutual account was a "debt," as the term is defined in the FDCPA, because she cannot establish that it was incurred for "personal, family, or household purposes," as the FDCPA requires, *see* 15 U.S.C. 1692a(5); (3) plaintiff did not provide CCS with effective notice that she refused to pay an alleged debt; and (4) even if plaintiff effectively notified CCS that she refused to pay a debt, CCS may not be held liable because it has shown that the violation was an unintentional, bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error, *see* 15 U.S.C. § 1692k(c).

## I. ARTICLE III STANDING

CCS argues that its collections notices did not inflict any actual injury on plaintiff, and therefore, the FDCPA claim she purports to raise is no more than a "bare procedural violation," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016), *see Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 910 (7th Cir. 2017); *Meyers v. Nicolet Restaurant of DePere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016), which is insufficiently concrete to satisfy Article III standing requirements.

The Seventh Circuit has long held that a plaintiff in an FDCPA case "has Article III standing" to seek statutory damages "based *solely* on . . . receiving allegedly unlawful debt collection demands." *Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017). *Spokeo* does not alter these decisions. *Id.* at *4 ("*Spokeo* does not sweep so widely as to overrule Seventh Circuit decisions affirming the power of Congress to enact

5

statutes creating legal rights, the invasion of which confers standing even though no injury would exist without the statute.") (internal quotation marks omitted); *see Aguirre v. Absolute Resolutions Corp.*, No. 15 C 11111, 2017 4280957, at *4 (N.D. Ill. Sept. 27, 2017) ("*Spokeo* does not indiscriminately sweep aside all the legal rights created by Congress that confer standing where no injury would otherwise exist."). In *Spokeo*, posting inaccurate personal information about the plaintiff on a consumer website may have been a "bare procedural violation" of the Fair Credit Reporting Act, but sending plaintiff "communications from which she was expressly supposed to be protected . . . constitutes a real injury in and of itself," *Swike v. Med-1 Sols., LLC*, No. 17 C 1503, 2017 WL 4099307, at *4 (S.D. Ind. Sept. 15, 2017) (finding 1692c(c) claim asserted a concrete injury under *Spokeo*), "in precisely the form the [FDCPA] was intended to guard against," *Reed v. IC Sys., Inc.*, No. 3:15-279, 2017 WL 89047, at *4 (W.D. Pa. Jan. 10, 2017) (internal quotation marks omitted) (plaintiff, as the "object of repeated phone calls" from defendant, suffered concrete injury under *Spokeo*); *see Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 756 (6th Cir. 2018) ("[T]he FDCPA's purpose 'is to protect consumers from a host of unfair, *harassing*, and deceptive debt collection practices.'") (quoting S. Rep. No. 95-382, at 2 (1977) (emphasis added)).

Since the Supreme Court's decision in *Spokeo* and the Seventh Circuit's decisions in *Meyers* and *Gubala*, district courts within this Circuit have typically found FDCPA claims to assert concrete injuries, even if the injury is "intangible" and causes no pecuniary loss. *See Aguirre*, 2017 4280957, at *4 (citing cases); *Swike*, 2017 WL 4099307, at *4 (same). This case is no exception. The July 16, 2016 letter, to the extent it was sent in violation of 16 U.S.C. 1692c(c), caused just such an intangible but concrete injury to plaintiff. Plaintiff has standing to assert her claim based on the letter under Article III.

6

## II. WHETHER THE LIBERTY MUTUAL ACCOUNT WAS A "DEBT"

Under 15 U.S.C. § 1692a, the FDCPA applies to "debts" incurred "primarily for personal, family, or household purposes." Plaintiff has submitted a declaration in which she states that her Liberty Mutual insurance policy was "personal" and "not used for business purposes." (Pl.'s LR 56.1 Stmt., Ex. A, Pl.'s Decl. ¶ 2, ECF No. 34-2.) CCS argues that, at her deposition, plaintiff could not remember any details about the policy that Liberty Mutual referred to CCS for collection (Pl.'s LR 56.1 Resp. ¶¶ 18-19), and therefore, according to CCS, plaintiff's declaration is a "sham," which the Court should not consider. Without the declaration, CCS argues, plaintiff is without evidence that the Liberty Mutual accounts meets the FDCPA's definition of debt, and she cannot withstand defendant's motion for summary judgment.

CCS is correct that the Seventh Circuit has "long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996). But the "sham affidavit rule applies only when a change in testimony is 'incredible and unexplained.'" *United States v. Funds in the Amount of $271,080*, 816 F.3d 903, 907 (7th Cir. 2016) (quoting *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 751 (7th Cir. 2010)). Plaintiff's declaration does not qualify as an "incredible and unexplained" change in testimony. Viewing her deposition testimony about the Liberty Mutual policy in its full context, plaintiff was attempting to convey that she was uncertain of the amount she owed, if any, because CCS asked her to pay different amounts at different times. (Def.'s LR 56.1 Resp., Ex. A, Pl.'s Dep. at 28:1-29:20, ECF No. 43-1.) Plaintiff was asked, "You don't remember anything about your Liberty Mutual account?" and she answered, "No," but that was the last of a string of questions about amounts owed, collection attempts, and account numbers, not the underlying insurance policy. Plaintiff

never said that she could not remember whether the Liberty Mutual insurance policy was a personal or business policy. Thus, plaintiff's declaration is properly understood as a "'clarifi[cation of] an earlier statement which is ambiguous or confusing,'" not a contradiction. *See Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015) ("a 'contradiction' exists only when the statements are 'inherently inconsistent'") (quoting *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004); *see also Cook v. O'Neill*, 803 F.3d 296, 298 (7th Cir. 2015) ("sham" exclusionary rule does not apply where post-deposition affidavit is "amplification rather than contradiction").

Plaintiff's declaration is not a "sham," and based on the declaration, a reasonable jury could conclude that plaintiff obtained the Liberty Mutual policy for personal or household purposes. There is sufficient evidence that the amount plaintiff owed on her Liberty Mutual policy was a "debt" within the meaning of the FDCPA to survive defendant's motion for summary judgment on that issue. However, as the Court will explain below, summary judgment for defendant is appropriate on other grounds.

## III.    EFFECTIVE NOTICE AND RECEIPT

CCS argues that it never had effective notice that plaintiff had refused to pay the Liberty Mutual debt because she faxed her refusal letter to the 3099 number, a number controlled by Enterprise, not CCS. CCS contends that it did not control or monitor this number, nor did it advertise this number as a means of contacting CCS about collection notices, and it never received the 3309 fax until after plaintiff filed this suit. Plaintiff makes two arguments in response.

First, plaintiff argues that CCS was on notice of plaintiff's refusal to pay based on Enterprise's receipt of the 3099 fax because a debt collector "'should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf,'" *Janetos v. Fulton Friedman &*

*Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016) (quoting *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000)). According to plaintiff, because Enterprise supplies the labor CCS uses to perform its operations, Enterprise is "thoroughly enmeshed in the debt collection business" of CCS, *Hernandez v. Midland Credit Mgmt., Inc.*, No. 04 C 7844, 2007 WL 2874059, at *16 (N.D. Ill. Sept. 25, 2007); *see Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, 929 F. Supp. 2d 502, 529 (D. Md. 2013) ("[P]ermitting . . . corporate entities to circumvent the FDCPA by relying on affiliated entities . . . contradicts this Court's obligation to construe broadly the FDCPA to effectuate its remedial purpose."); *see also Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000) ("Just as in the Title VII context, the debt collection company answers for its employees' violations of the statute.").

As CCS correctly responds, however, plaintiff has not cited a case in which a court found a debt collector's collection demand unlawful based on notice to an affiliated entity. In all of the cases cited in the previous paragraph, the question was whether the FDCPA permitted a debt collector to be held liable for an affiliated entity's collection activity, not whether a debt collector's collection activity violated the FDCPA based on an affiliated entity's notice of certain facts. Plaintiff does not account for the absence of pertinent authority, nor does she explain why the authority she cites supports her point, despite its factual dissimilarity from this case. Even if there are no cases on point, plaintiff could at least have given reasons for extending the reasoning of such cases as *Janetos* and *Pollice* to the circumstances of this case, but it is not sufficient merely to cite cases that do not directly apply as if they do. *United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with *pertinent* authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary

9

authority, forfeits the point. We will not do his research for him."). Under such circumstances, the Court considers the argument waived.[1]

Second, plaintiff argues that CCS was on notice of plaintiff's refusal to pay the Liberty Mutual debt based on plaintiff's 5710 fax. According to plaintiff, CCS received the 5710 fax on July 8, 2016, and, although that letter cited a different account number and creditor, it contained plaintiff's name and the last four digits of her social security number, which should have been sufficient to allow CCS to locate her account.

CCS responds that plaintiff should be barred from asserting this theory, which did not arise in her complaint or in discovery at any point. Further, CCS argues, plaintiff's argument is meritless because 15 U.S.C. § 1692c(c) provides that, if a consumer notifies a debt collector that she "refuses

---

[1] Even if plaintiff's argument based on CCS's affiliation with Enterprise were not waived, the Court doubts its merit. Plaintiff ignores the fact that CCS provided a fax number in the contact information contained in its collection notices, and, inexplicably, plaintiff used a different one, with no indication that the number was appropriate for collections-related correspondence. One court has reasoned at least in part that, if a debt collector's correspondence with a consumer specifies a particular address for disputing debts, and the consumer sends a dispute letter to the debt collector at a different address, then the debt collector should not be expected to cease collection of the debt based on that letter. *Citibank S. Dakota, N.A. v. Razvi*, No. A-1084-07T3, 2008 WL 2521082, at *3 (N.J. Super. Ct. App. Div. June 26, 2008). Another court was unwilling to treat notice to one debt collector as notice to another debt collector based only on a relationship between them. *See Thompson v. Chase Bank N.A.*, No. 09 C 2143, 2010 WL 1329061, at *2 (S.D. Cal. Mar. 30, 2010) (dispute letter addressed and sent to original debt collector, rather than acquiring debt collector who had purchased certain of its assets and assumed "all duties and obligations with respect to" collecting plaintiff's debt, did not put acquiring debt collector on notice of dispute); *see also O'Connor v. Check Rite*, 973 F. Supp. 1010, 1017 (D. Colo. 1997) (at summary judgment stage, court would not infer that plaintiff had sent and debt collector had received a cease and desist letter, based only on reference to 15 U.S.C. § 1692c(c) in debt collector's letter, without other proof). Debt collectors are required to use a "valid and proper address" to provide effective notice to consumers, *Glynn v. Midland Funding*, No. 2:16-CV-02678, 2018 WL 2021360, at *5 (C.D. Cal. Apr. 27, 2018), and where the debt collector clearly provides its contact information in its collection notices, the Court sees no reason to hold consumers to a lesser standard, at least on that basic, limited issue. *See Thompson*, 2010 WL 1329061, at *2; *Razvi*, 2008 WL 2521082, at *3. But because plaintiff's argument is waived, the Court need not reach these issues.

to pay a debt," then the debt collector is barred from communicating with the consumer only "with respect to such debt," not generally.

Putting to one side the question of whether plaintiff has raised this new theory too late, the Court agrees with CCS that the argument fails based on § 1692c(c)'s "with respect to such debt" language. Courts have interpreted similar language in other provisions of the FDCPA to mean that the plaintiff must put the debt collector on notice "with respect to the specific debt being collected." *See Dore v. Five Lakes Agency, Inc.*, No. 14 CV 6515, 2015 WL 4113203, at *4 (N.D. Ill. July 8, 2015) (citing *Graziano v. Harrison,* 950 F.2d 107, 113 (3d Cir. 1991)) (under 15 U.S.C. § 1692c(a)(2), debt collector's duty to refrain from communicating with consumer "in connection with the collection of any debt" is triggered only by notice that consumer has counsel "with respect to such debt," regardless of notice of attorney representation with respect to other debts or matters). The Court sees no reason to interpret the "with respect to such debt" language differently in § 1692c(c). In fact, a contrary interpretation would have dubious consequences. For example, if numerous creditors had referred one consumer's numerous debts to the same debt collector, how would the debt collector know from a letter such as the 5710 fax, without any valid account numbers or file numbers, whether the consumer refused to pay all of the debts, some of them, or only one of them? It would be unfair to require the debt collector to assume that the consumer refuses to pay any of his debts, and it might have unwelcome consequences for the consumer, who might face increased risk that the debt collector will "invoke specified remedies" as a result. *See* 15 U.S.C. § 1692c(c)(2) & (3).

The 5710 fax gave CCS no indication that plaintiff was refusing to pay the Liberty Mutual debt, and plaintiff cites no authority for the proposition that the FDCPA imposed on CCS some duty to search for debts plaintiff might have meant to refuse to pay; indeed she cites no authority

11

at all. The Court agrees with CCS that plaintiff's faxes did not place CCS on notice that plaintiff was refusing to pay her Liberty Mutual debt, and that CCS was therefore not required to cease communication with respect to that debt under 15 U.S.C. § 1692c(c).

## IV. BONA FIDE ERROR DEFENSE

CCS further contends that, even if plaintiff's faxes put it on notice that plaintiff had refused to pay the Liberty Mutual debt, CCS is not liable for sending plaintiff the July 16, 2016 letter because the letter was a bona fide error.

Under the FDCPA,

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C.§ 1692k(c). "In order to claim this defense, the burden is on the defendant to show (1) 'that the presumed FDCPA violation was not intentional'; (2) 'that the presumed FDCPA violation resulted from a bona fide error'; and (3) 'that it maintained procedures reasonably adapted to avoid any such error.'" *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 349-50 (7th Cir. 2018) (quoting *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005)). The bona fide error defense applies to "errors like clerical or factual mistakes." *Jerman*, 559 U.S. at 587; *see id.* at 604-05 (bona fide error defense does not apply to errors based on mistaken interpretation of the FDCPA).

There is no evidence that CCS had actual knowledge of the fact that plaintiff was refusing to pay the Liberty Mutual debt at the time it sent the July 16, 2016 letter, and no doubt that the error was an unintentional, bona fide error. *See Jenkins v. Heintz*, 124 F.3d 824, 835 (7th Cir. 1997) (collecting debts for unauthorized force-placed insurance premiums, when debt collector did not know the insurance was unauthorized, was unintentional bona fide error); *Turner v.*

12

*J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 996 (7th Cir. 2003) ("To the extent that J.V.D.B. were to rely on § 1692k(c) [to escape FDCPA liability for trying to collect bankruptcy-discharged debt], proof that it was unaware of the bankruptcy would be a logical first step.").

CCS has adduced evidence that it has instituted procedures for receiving, organizing, and responding promptly to collections correspondence, including letters concerning a consumer's refusal to pay a debt; it responded promptly, for example, to the letter plaintiff faxed to the 5710 number, even though it could not identify the account it concerned. (*See* Pl.'s LR 56.1 Resp. ¶¶ 21-22, 25-35.) Additionally, there is evidence that CCS has put in place procedures reasonably adapted to ensuring that its employees recognize communications conveying a refusal to pay and ceasing communications by closing the account immediately. (*Id.* ¶¶ 21-22, 25-28, 30-32.)

The bona fide error defense "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 539 (7th Cir. 2005); *see Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1030-31, 1034-35 (6th Cir. 1992) (finding bona fide error because collection letter sent a day after debt collector received request to cease communication pursuant to 1692c(c) was a "clerical error" due to stop order and collection letter "crossing in the mail"). There is no evidence that CCS's error, if it qualifies as one, is common enough that a reasonable debt collector would plan for it specifically. *See Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004) (not reasonable to require debt collector to independently confirm that all incoming accounts were not in bankruptcy in part because "only .01% of all accounts referred are later learned to be in bankruptcy").

In considering what precautions are reasonable, the Seventh Circuit has recognized that "[l]iability would be especially perverse" under the FDCPA if courts were to hold debt collectors liable even when "the plaintiff is the principal author of the harm of which she complains." *Ross*

*v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 498 (7th Cir. 2007) (defendant sent dunning letter to collect discharged debt in part because plaintiff did not disclose on her bankruptcy schedule debts contracted under other names). Where the consumer is the "'least cost avoider' of the harm for which . . . she seeks legal redress," it may be unfair to hold the debt collector liable. *Id.* (quoting *Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 743 (7th Cir. 1999)); *cf. Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 401 (6th Cir. 1998) (under § 1692k(c), debt collector not liable where its FDCPA violation was traceable to the referring creditor's clerical error, not its own).

In this case, plaintiff was the "principal author of the harm of which she complains": she had only to send a letter to CCS at the fax number displayed on the collection notices CCS had sent her and include the proper account number, as the notices specifically directed her to do. (*See, e.g.,* June 5, 2016 Collection Notice, Pl.'s LR 56.1 Stmt., Ex. D, ECF No. 34-5 at 22 ("**SENDING CORRESPONDENCE**: Very important; attach a copy of this notice as your cover sheet when faxing or mailing. Fax to (617) 658-5719.").) It appears from the way CCS handled her 5710 fax and the evidence about its procedures for handling incoming correspondence that if she had simply done that, CCS would have closed her account and ceased its collection attempts. To the extent that sending the July 16, 2016 letter was an error that technically violated the FDCPA, it was the sort of unintentional, bona fide, "clerical or factual" error, *Jerman*, 559 U.S. at 587, for which 15 U.S.C. § 1692k(c) provides safe harbor.

## CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for summary judgment [44] and denies plaintiff's motion for summary judgment [33]. Civil case terminated.

**SO ORDERED.**                                            **ENTERED:** October 19, 2018



**HON. JORGE ALONSO**
**United States District Judge**